8420

## MARYLAND CASUALTY CO. v. GAFFNEY MANUFACTUR-ING CO.

CONSTRUCTION OF CONTRACTS—INSURANCE—PAROL EVIDENCE.—Where a contract read in the light of the circumstances surrounding its execution shows a latent ambiguity parol evidence is admissible to show the true intention of the parties. *Here* a policy of employer's liability, purporting on its face to cover the employees of three mills, so construed, is properly held to cover the employees of only one mill.

Before ALDRICH, J., Cherokee, Fall term, 1911. Affirmed.

Action by Maryland Casualty Co. v. Gaffney Manufacturing Co.    Plaintiff appeals.

*Messrs. Otts & Dobson,* for appellant, cite: *No ambiguity in contract:* 77 S. C. 92; 8 Gray 427; 134 S. W. 1164; 80 At. 217; 141 S. W. 319; *and none alleged:* 108 S. W. 829. *Agent cannot say what insuring clause covers:* 180 U. S. 308; *and evidence on that is incompetent:* 56 N. E. 134; 84 N. Y. S. 958; 26 S. C. 258; 9 Cyc. 591; 95 Fed. 625; 84 S. W. 1041; 63 N. E. 110; 28 So. 136; 8 N. W. 67; 9 Cyc. 590; 55 N. E. 292; 180 U. S. 132; 151 U. S. 452; 136 U. S. 287; 85 N. E. 1006; 98 Pac. 1075; 120 Fed. 916; 171 U. S. 688; 2 Ont. 89; 78 At. 225; 43 Am. D. 428; 7 Am. R. 638; 16 L. R. A. (N. S.) 1182-3, 1186.

*Mr. J. C. Jeffries,* contra, cites: *How ambiguity may appear:* 3 McC. 269; 1 McC. 258; 1 Rich. Eq. 426; 80 S. C. 472; 17 Cyc. 682; 54 L. R. A. 673.

*Messrs. Nicholls & Nicholls* cite: *Minds of contracting parties did not meet:* 2 H. & C. 906; 31 S. C. 53. *An ambiguity may be explained by parol:* 29 (L. Ed.) U. S. 864; 64 S. C. 520; 50 S. C. 169; 19 Wall. 48.

January 18, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Plaintiff issued to defendant an employer's liability policy for one year from July 3, 1904. The policy provided that the premiums to be paid thereon should be 17 cents per hundred dollars of the amount paid during the year in wages or salaries to the employees insured, and that the insurance should not cover injury to any employee whose compensation was not included in the pay roll. As the amount of the pay roll was subject to variation, the premium was estimated, when the policy was issued, and it was stipulated in the policy that, at the end of the year, if more than the estimated premium had been earned, as ascertained by the rate agreed upon and the pay rolls, the insured would pay the difference; if less, the insurer would refund the excess,—the minimum premium to be $25.00.

The defendant's business is manufacturing, bleaching, dyeing, printing, mercerizing, and finishing cotton goods. It has three mills in which the various processes of the business are carried on. In Nos. 1 and 2, everything is done in the manufacturing of cloth, beginning with the raw material. In No. 3, the other processes above mentioned are carried on to the finishing of the goods for market, and this mill is called the finishing plant. It was built some ten years after the other mills; and, while they are all owned by the defendant, the pay roll and other accounts of the finishing plant are kept separate from those of the other mills.

The hazard to the employees of the finishing plant is greater than to those of the other mills, and, therefore, the rate for indemnity insurance against injury to them is $2\frac{1}{2}$ cents per hundred dollars of the pay roll higher than for the others. When plaintiff issued its policy, defendant had a policy covering the employees in mills 1 and 2 in

another company, which had been obtained through the agency of Mr. Walter Brem, of Charlotte, N. C. But defendant had declined to insure the employees in mill No. 3 in that company, on the ground that its rate was too high. As Mr. Brem could not write a policy on mill No. 3 in his own company, he brokered it to the Southern States Trust Company, the general agent of the plaintiff, who wrote the policy and sent it to defendant through Mr. Brem. This policy was returned to the company through Mr. Brem, to whom defendant's secretary wrote, calling his attention to some inaccuracies in the policy, and asking that it be corrected to conform to the directions given in his letter. The policy and the letter were forwarded to plaintiff through its Charlotte agency. A new policy was written and sent to defendant, and the first one was destroyed.

The plaintiff, alleging that the new policy covered all the defendant's employees, in all its mills, brought this action to recover $297.50, which amount it claims is the balance due for premium earned, according to the terms of the policy. Under the rulings and instructions of the Court, the jury found for defendant.

Practically the only question in the case is whether the Court erred in admitting parol evidence to show that the parties intended the policy to cover only the employees of the finishing plant. Appellant admits the general rule, that such evidence is admissible to remove an ambiguity, when a written instrument does not clearly express the intention of the parties, but contends that the policy in question was not ambiguous. If we look to the policy alone, there is no ambiguity. Upon its face, it appears to cover all of defendant's employees. But, when read in the light of the conditions and circumstances existing when it was issued, it becomes exceedingly doubtful if the instrument does not bear sufficient internal evidence, aided and explained by such facts and circumstances, to show that the parties intended that it should cover only the employees of mill

No. 3. Therefore, the evidence shows a case of latent ambiguity, which renders parol evidence of the intention of the parties admissible,—just as there is no ambiguity in a grant of "Black Acre," until it is shown by extrinsic evidence that the grantor owned two tracts of that name.

Some of the facts and circumstances which not only raise but tend to remove the ambiguity of the policy are: At the time it was issued, defendant had a similar policy in a standard company on the employees in mills 1 and 2 at the rate of 14½ cents per $100.00 of the annual pay roll, which is 2½ cents per hundred less than the rate charged by plaintiff for the same employees in mills 1 and 2; that the estimated premium on plaintiff's policy was $42.50, or 17 cents per hundred of $25,000.00, while the annual pay roll of mills 1 and 2 was estimated to be $200,000.00; that the number of employees of mill No. 3 is about 100, while there are upwards of 1,000 in the other mills; that mill No. 3 has a different superintendent from 1 and 2, and the application and schedule attached spoke of the "superintendent," in the singular, as one of the employees insured; that mill No. 3 had three elevators, and that number is given in the application, while all the mills have five or six elevators. Against these circumstances, which are relied on by the defendant, as tending to show that the intention was that the policy should cover only the finishing plant, or mill No. 3, the plaintiff relies especially upon two corrections which the defendant's secretary required plaintiff to insert in the second policy, to wit: "The estimated pay roll includes the wages of 'president and treasurer' and the 'secretary,' all clerks in office and store, superintendent, overseers, assistants, mill operatives, laborers, helpers, and all drivers and drivers' helpers, latter in or out of yards, shops or factories—no exceptions." Appellant contends that this description of those included in the pay roll shows an intention to include all the employees in all the mills, relying for this construction particularly upon the words "facto-

ries," and "no exceptions." While the use of the words
"factories" does tend to sustain plaintiff's view, it is by
no means conclusive of the matter, for the terms used in
the policy are, for the most part, general, and we sometimes
find the singular when the plural number would have been
more appropriate, and *vice versa.* In the second paragraph
of the policy, we find the word "factory" used which is
not exactly appropriate, if all the employees working in the
three factories were insured. The words "no exceptions"
are as applicable to the employees in mill No. 3, as if the
paragraph under consideration had reference to all the
defendant's employees. The plaintiff relies next most
strongly upon the description of defendant's business in the
application, where, under "trade or kind of business," it is
stated as follows: "Mfg. cotton goods, bleaching, dyeing,
printing, mercerizing, and finishing." Evidently that was
not intended to describe the kind of labor in which the
employees insured were engaged, as appellant contends;
but rather as informing the insurer of the trade or business
in which defendant was generally engaged, and the state-
ment does exactly and correctly answer that question. Pre-
cisely the same answer was given to the same question in
the policy which defendant had in another company on mills
1 and 2, and in those mills there was no bleaching, dyeing,
printing, mercerizing or finishing.

Section 1810 of the Civil Code of 1902 (section 2418,
Civil Code, 1912) provides: "Any person who solicits
insurance in behalf of any insurance company not organ-
ized under or incorporated by the laws of this State, or who
takes or transmits other than for himself any application
for insurance or any policy of insurance to or from such
company, or who advertises or otherwise gives notice that
he will receive or transmit the same, or who shall receive
or deliver a policy of insurance of any such company, or
who shall examine and inspect any risk, or receive, collect
or transmit any premium of insurance, or make or forward

any diagram of any building or buildings, or do or perform any other act or thing in the making or the consummating of any contract of insurance for or with any such company, other than for himself, or who shall examine into and adjust, or aid in adjusting, any loss for or in behalf of any such insurance company, whether any such acts shall be done at the instance or request or by the employment of such insurance company, shall be held to be acting as the agent of the company for which this act is done or the risk is taken." Under the statute above quoted, Mr. Brem, who brokered the policy to the plaintiff, must be held to have been the plaintiff's agent, and his knowledge must be imputed to the plaintiff. He testified that he knew the facts and circumstances hereinbefore stated, and that it was intended that the policy should cover only the employees of the finishing plant. Mr. J. H. Stone, the auditor of the plaintiff company, also testified that he knew that it was intended that the first policy issued by his company should cover only the finishing plant. There is certainly nothing in the letter written by the defendant's secretary, asking for certain changes in the policy, which makes it so clearly cover all the defendant's mills that the Court could so construe the policy, and so hold as a matter of law, notwithstanding the evidence above pointed out.

There was testimony of one circumstance, which occurred during the life of the policy, which shows that even the plaintiff did not then understand that it covered the employees in mills 1 and 2. An employee of one of these mills was injured some time in the fall of 1904, and, according to the testimony of defendant's agent, by his mistake the accident was reported to the plaintiff, through Mr. Brem. The plaintiff returned the report, on the ground that it appeared that the injury occurred in one of the mills not covered by its policy; whereupon defendant acknowledged the mistake, and withdrew the report.

Under the circumstances, there was no error in admitting the evidence complained of. The foregoing practically disposes of all the errors assigned.

Affirmed.