### 18055

Buford L. BOST, Appellant, v. BANKERS FIRE AND MARINE INSURANCE COMPANY and State Bank & Trust Company, Respondents.

(130 S. E. (2d) 907)

*Messrs. Smith & Smith and Irene Krugman Rudnick,* of Aiken, *for Appellant,*

*Messrs. Julian B. Salley, Jr., Henry Summerall, Jr.,* and *Henderson, Salley & Cushman,* of Aiken, *for Respondent,*

April 16, 1963.

Bussey, Justice.

The plaintiff, appellant in this action, seeks to recover from the defendant, respondent Bankers Fire and Marine Insurance Company, under a contract of insurance, for the destruction of a house trailer by wind storm.

On motion of the defendant insurance company, State Bank and Trust Company, New Ellenton, South Carolina, was made a party to the action because of a mortgage held by it covering the said trailer.

The policy insured against loss by fire, windstorm and extended coverage in the amount of $3,000.00, and was first issued on November 30, 1956, at which time the trailer was located in New Ellenton, South Carolina. The policy was renewed annually and was in effect at the time of the loss on September 29, 1959, at which time the trailer was located at Edisto Beach, Charleston County, South Carolina.

The complaint alleged that plaintiff notified the agent of the defendant insurance company of the removal of the property and that the defendant insurance company waived its right and was estopped from denying insurance coverage by reason of such knowledge. The insurance company, by its answer, contended that the trailer was insured only at New Ellenton, South Carolina, and denied coverage due to removal, and specifically plead a provision of the policy referring to the effect of the increase of any hazard by means within the control or knowledge of the insured.

The defendant bank filed a cross claim against the defendant insurance company for the amount of its mortgage, and the defendant insurance company in answer thereto alleged that the agent of the insurance company and the agent of the bank was one and the same person, and that it was not liable to the bank in any amount since the bank had knowledge of the change of location which it failed to communicate to the insurance company.

The trial judge submitted the case to the jury on the issue of waiver and estoppel, with instructions that in the event a verdict was rendered in favor of the plaintiff, that his honor would set the amount of the judgment. The jury found in favor of the plaintiff, against the insurance company, and failed to render a verdict in behalf of the bank against the insurance company. The insurance company thereafter moved for a judgment non obstante veredicto,

which motion was granted. From this order plaintiff appeals, there being no appeal by the bank.

The statement of the case contains the following:

"The issue before the court is whether there was sufficient testimony in the case to permit the trial judge to submit the matter to the jury on the issue of waiver and estoppel * * *."

Although the issue is thus very simply and broadly stated, the contentions of the parties thereabout are several as will be hereinafter more fully discussed. The description of the trailer as set forth in the policy was as follows:

"One Travelite House Trailer, located on lot Oakhill Subdivision in New Ellenton, South Carolina, situated on permanent foundation."

The policy, in part, provided as follows:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured. * * *"

One Donald Kennedy occupied the position of being manager of the New Ellenton Branch of State Bank and Trust Company, and was also an insurance agent. He was not appointed as an agent by the defendant Bankers Fire and Marine Insurance Company, but was appointed as a special agent by Greenwood Insurance Agency, which agency did represent the respondent here. He was referred to in the testimony as a sub-agent of the respondent.

The transaction giving rise to the issuance of the policy was that the plaintiff Bost financed the trailer with the bank, dealing with Kennedy, who took the application for the insurance and collected and remitted the premiums, initial and renewal. The original policy and a copy was sent by the agency to Kennedy who retained the orginal and delivered the copy to Bost. This same procedure was followed with respect to certificates of renewal.

The trailer remained at New Ellenton, South Carolina, until June 5, 1959, when it was removed by Bost to the lot at Edisto Beach in Charleston County, South Carolina, where it was placed upon a permanent foundation similar to the foundation at New Ellenton, and there, on the 29th day of September, 1959, it was destroyed by a hurricane.

The plaintiff Bost and his wife testified that in February 1959, they conferred with Mr. Kennedy in connection with a loan for the purpose of constructing a house, and that in the process of the negotiations thereabout, Kennedy asked Bost if he was going to trade the trailer in on the house, whereupon Bost informed him that he was not going to trade the trailer but was going to trade the property on which the trailer was located and was taking the trailer to the beach. Bost further testified that, in April 1959, he had refinanced the trailer with Kennedy at the bank and again informed him of his plans to move the trailer to Edisto Beach, and that on several occasions subsequent to June 5th, he had told Kennedy of the actual removal and had even invited Kennedy to occupy the trailer while fishing at the beach.

The record before up contains neither a denial nor an admission by Kennedy as to the conversations in February and April 1959 about moving the trailer, which Bost testified to. However, he admitted that after June 5th he knew of the actual location of the trailer, his testimony thereabout being as follows:

"A: I picked up the knowledge somewhere. I don't know where or when.

I lived close to him to know a good bit about the business. I knew he had a home down there. I did know the trailer was down there on the property. How I got the information I know he didn't come to the bank and give me official notice it had been moved."

Although he was not clear as to the source of his knowledge, he testified that he had not received direct notice in the course of his duties as special agent for the Greenwood

Insurance Agency, and that he had not notified either the Greenwood Insurance Agency or the respondent here of the removal of the trailer prior to September 29.

On the morning of September 29, Bost, having heard of the approach of a hurricane, went to see Kennedy at the bank. Their testimony as to what occurred on this occasion is at variance, Kennedy contending that Bost came to ascertain whether he had any coverage at Edisto Beach, and that he then sought to obtain by telephone from Greenwood an endorsement which would afford him coverage, which endorsement was declined. Bost's account of this interview is that he went to the bank for the purpose of ascertaining from Kennedy what he should do with respect to reporting any loss that might occur, and also what he should do about protecting the trailer subsequent to any loss that might occur.

The respondent here contends that the law of waiver is not applicable to this case and construes the description of the trailer, "One 1952 Travelite house trailer located on lot Oakhill Subdivision, New Ellenton, S. C., situated on permanent foundation," as affording insurance coverage only so long as the trailer was so situated and located.

The circuit judge in his order said, among other things, "waiver cannot be used to extend coverage or create a primary liability." In support of respondent's contention, there is cited the following from 113 A. L. R. (1938) at page 858:

"It is well settled that conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground of fortfeiture, may not be waived by implication from conduct or action, without an express agreement to tha⁺ effect supported by a new consideration. This rule may be, as it often is, otherwise stated that the doctrine of waiver may not be applied to bring within the coverage of the policy risks not covered by its terms, or risks expressly excluded therefrom."

The principle announced by the circuit judge and set forth in the foregoing quotation was recognized in the concurring opinion of Mr. Justice Fraser and in the dissenting opinion of Mr. Justice Cothran in the case of *Keistler Co. v. Aetna Insurance Co.,* 124 S. C. 32, 117 S. E. 70. No South Carolina case, however, has been cited or has come to our attention which has actually applied the proposition that a condition going to coverage or scope of the policy, as distinguished from one furnishing a ground of forfeiture, may not be waived by implication from conduct or action. Without questioning the soundness of such doctrine, before it could be applied, it would first have to be determined which category the condition or conditions fell in. In the same annotation in 113 A. L. R., relied on by the respondent, it is said at page 859:

"Although the distinction between a condition furnishing a ground of forfeiture and one going to the scope of coverage of the policy is not expressly defined, the facts, and occasionally the discussion, found in some cases, warrant the conclusion that under the former, by the exercise of the insurer's option, the entire policy is declared forfeited and is treated as though of no effect to cover any risk whatsoever, as for example a condition that upon insured's failure to pay the agreed premiums as they mature the policy shall be null and void; on the other hand, while a condition affecting the scope or coverage of the policy excludes certain risks from the operation of the policy in the event of the occurrence of certain conditions," etc.

The annotation then goes on to point out that under the latter condition, while certain risks are excluded, the policy still remains in force and effect as to other risks.

The foregoing distinction between the two types of conditions was recognized in *Peters v. Great American Insurance Co.,* 177 F. (2d) 773 (4th Circuit, 1949), which was a case arising in South Carolina and cited by the respondent here.

. Applying the foregoing test to the policy provisions here under consideration, it seems clear to us that the conditions of the policy relied upon by the respondent furnished a ground of forfeiture rather than being conditions affecting the scope or coverage of the policy. There is evidence that the trailer was permanently removed to Edisto Beach, a location of greater hazard, and that the very lot upon which it stood in New Ellenton was traded upon a house by the owner, Bost. There is evidence that the permanency of this removal was known to the agent Kennedy, both before and after its actual removal, and for a considerable time before any loss occurred. Under these circumstances, the insurer at its option had the right to declare the entire policy forfeited as it no longer covered any risk whatsoever under the conditions relied upon by the insurer.

Had the insurer exercised its option and declared the entire policy forfeited, it, of course, would have been under the duty to refund to Bost the unearned portion of the premium.

Since the agent Kennedy admittedly had knowledge of the removal of the trailer after June 5, 1959, and long prior to the date of loss, and it is clearly inferable from the evidence that he also had knowledge of the permanency of the removal, the real question in this case is whether under the circumstances the knowledge of Kennedy was imputable to the respondent.

The respondent contends, *inter alia,* that the knowledge of Kennedy here could not, as a matter of law, be imputed to it, and in this connection points out that the trial judge's charge relating to the question of imputation of knowledge was not excepted to by the plaintiff and is, therefore, right or wrong, the law of the case. The complete charge of the trial judge is not in the record, only excerpts therefrom being printed, but we shall consider the question in the light of the language relied upon by respondent wherein the judge

charged that the respondent, "could not be chargeable with knowledge with anything he was to know unless Mr. Kennedy acquired that knowledge, or after acquiring that knowledge *should have used that knowledge* when acting as agent or business representative of the Bankers Fire and Marine Insurance Company." (Emphasis added.)

Treating the foregoing as the law of the case, there is no evidence from which it could be reasonably inferred that Mr. Kennedy acquired his knowledge while acting as agent or as a business representative of the respondent. The question still remains, however, whether after acquiring such knowledge, he should have used it when acting as an agent of the respondent. Under all of the circumstances, reflected by the evidence, we are of the opinion that Mr. Kennedy should have used that knowledge as agent of the respondent.

"The duty of an agent to make full disclosure to his principal of all material facts relevant to the agency is fundamental to the fiduciary relation of principal and agent. It is a primary incident of the obligation of an agent that he make a prompt, full, and frank disclosure and account of all matters concerning the agency, and he must give the principal any information that the latter would desire to have and which can be communicated to him without violating a superior duty to a third person. * * *" 3 Am. Jur. (2d) 581, Agency, Section 200.

Much stress is laid by the respondent on the fact that Kennedy was a subagent, not directly appointed by the respondent, and it is contended that Kennedy was an agent of extremely limited authority. For the purpose of this case, the agency of Kennedy was controlled by Code Section 37-233, which reads as follows:

"Who deemed agents of insurance companies.—Any person who (a) solicits insurance in behalf of any insurance company, (b) takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, (c) advertises or gives notice that he

will receive or transmit any such application or policy, (d) shall receive or deliver a policy of insurance of any such company, (e) shall examine or inspect any risk, (f) shall receive, collect or transmit any premium of insurance, (g) shall make or forward any diagram of any building or buildings, (h) shall do or perform any other act or thing in the making or the consummating of any contract for or with any such company, other than for himself, or (i) shall examine into and adjust or aid in adjusting any loss for or in behalf of any such insurance company, whether any such acts shall be done by an employee of such insurance company or at the instance or request of such insurance company, shall be held to be acting as the agent of such insurance company for which such act is done or risk is taken. (1952 Code, § 37-233; 1947 (45) 322.)"

Under the foregoing section it has been held that even an agent who brokers a policy to the agent of another company is the agent of such other company and his knowledge is imputable to it. *Maryland Casualty Co. v. Gaffney Mfg. Co.*, 93 S. C. 406, 76 S. E. 1089. Where an agent of an insurance company issued a policy having knowledge that another company, of which he was also agent, had a policy on the same goods, issued by his predecessor, his knowledge would be imputed to the latter company under the foregoing section. *Madden v. Phoenix Ins. Co.*, 70 S. C. 295, 49 S. E. 855.

A case directly in point, we think, is that of *Norris v. Hartford Fire Ins. Co.*, 57 S. C. 358, 35 S. E. 572. In that case it was contended by the insurer, just as here, that its agent was one of limited authority, and that his knowledge had been casually obtained; not obtained while he was about any business of the insurer. With respect of his agency, this court pointed out that the agent Smith took applications for insurance but did not countersign the policies; that as agent he received the premiums and delivered the policy, which facts tended to enlarge his powers of agency, and he notified the insurance company of the destruction of the insured

building by fire, and that when the adjuster came to town, the agent Smith was with him when he inspected the ruins.

About the only difference between the facts of the instant case and the cited case is that here it does not appear whether Kennedy ever inspected the ruins in company with the adjuster or otherwise. After holding that Smith was an agent within the purview of the statute in the Norris case, the court went on to say,

"If it was the duty of Smith to inform the insurance company of the fire which had destroyed the dwelling house insured, might not the agent, Smith, be expected to convey to the insurance company knowledge he had acquired as to the breach of a condition of the policy which would be a forfeiture of the policy?"

It is well settled in this state that when an insurance company has the right to cancel the policy and fails to cancel it and return the unearned premium, the jury may consider that as evidence of intention to waive the forfeiture. It was so held in *Powell v. Continental Ins. Co. of City of New York,* 97 S. C. 375, 81 S. E. 654, a case wherein a forfeiture was claimed because of the removal by the insured of property from one location to another. After citing numerous authorities, the court there said:

"There was evidence in the case that Asbill, the agent, knew of the removal by the insured of the insured property, and there is no dispute that he was the agent of the defendant, and it was properly submitted to the jury, under proper instructions, whether or not this was a circumstance sufficient within itself or a circumstance tending to show waiver. If he knew it, he should have notified plaintiff, so that plaintiff could have arranged that his property could be insured, at the place he had moved to, either with the defendant or in some other company. A cancellation of the policy and a return of the unearned premium would have been sufficient notice to the plaintiff. If the agent of the company knew, and this was properly submitted to the jury, that the

plaintiff, by his action in removing his property, had thereby forfeited his insurance, fair dealing and good conscience demanded that he be informed of the consequences; it would not be right for the company, with the knowledge of this fact, to retain his premium and allow him to be lulled into a state of security thinking he had a good policy of insurance, whereas he had forfeited it, and after loss refuse to pay, thus inflicting loss and damage to him with his unearned premium, not returned before loss, but retained by them."

There is evidence here to the effect that Kennedy was the agent for the respondent from the inception of the policy in 1956 until after the loss; that he had knowledge of the removal of the trailer to a different location, both before and after its actual removal, and the permanent nature thereof. Possessed of this knowledge, he did nothing about either canceling or endorsing the policy, and nothing was done by him or his principal to accomplish a refund of any portion of the unearned premium to the insured, until some two months after the loss was incurred, when a refund in the amount of $3.84 was sent, not to the plaintiff, but to the bank. Whether this refund was based on short rate cancellation as of June 5th, the date of the removal of the trailer, or a flat rate cancellation as of September 29th, the date of the loss, does not appear in the record.

Under all of the circumstances, and for the foregoing reasons, we conclude that the circuit judge was correct in submitting the issue of waiver to the jury, and, accordingly, he was in error when he granted a judgment non obstante veredicto.

Reversed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.