513 S.E.2d 848

**Gwendolyn N. DARBY, Petitioner,**

v.

**The FURMAN COMPANY, INC., Respondent.**

**No. 24919.**

Supreme Court of South Carolina.

Heard Nov. 18, 1998.

Decided March 15, 1999.

---

5. Because we affirm the award, there is no need to address National Health's remaining issue.

344

Sally G. Calhoun, of Beaufort, for petitioner.

Larry D. Estridge, of Womble, Carlyle, Sandridge & Rice, of Greenville, for respondent.

TOAL, Justice:

This matter is before the Court on a writ of certiorari to review the Court of Appeals' decision in *Darby v. The Furman Co.*, No. 97–UP–241 (S.C.Ct.App. filed April 4, 1997). The case involves a breach of fiduciary duty claim against a real estate broker. The Court of Appeals remanded for further factual findings. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Petitioner Gwendolyn N. Darby ("Darby") owned a large tract of land in Greenville County. In 1987, Darby contacted respondent Furman Company, Inc. ("Furman") and spoke with its agent, Bill Fogleman ("Fogleman"). Darby expressed interest in selling 53 acres of her Greenville County property and signed an "Exclusive Right to Sell" contract on May 5, 1987. In that contract, Darby agreed to pay a $500 per acre real estate commission.

Fogleman produced Yarborough Real Estate Development Company ("Yarborough") as a potential purchaser. Yarborough planned to develop the property into a new housing subdivision. Darby signed a Contract of Purchase and Sale with Yarborough on May 15, 1987. Under the terms of that contract, a purchase money note and mortgage provided most of the purchase price. The contract required Darby to subordinate her security interest to the buyer's anticipated development financing. Their agreement placed no cap on the amount to which Darby's interest could be subordinated.

After Darby signed the purchase contract in May, agent Fogleman and his wife joined purchaser Yarborough and another real estate developer in forming Squires Creek Partnership ("Squires Creek"). Yarborough then transferred its interest in the real estate sales contract to Squires Creek. Squires Creek closed the sale of the property with Darby in December of that year. The trial produced conflicting testimony as to the extent Fogleman revealed to Darby his partnership interest with Squires Creek. Fogleman claims that he fully disclosed his interests to Darby. Darby maintains that she was unaware of the nature and extent of Fogleman's involvement with the purchaser. Fogleman did testify that he never put into writing any disclosure to Darby.

Squires Creek obtained more than $1.2 million in development financing for the project. The development project failed and the construction lender foreclosed on the property. Not only did Darby lose her land, but the foreclosure action eliminated her purchase money note and mortgage. Darby obtained a judgment against Squires Creek for the value then owing on its promissory note plus interest ($315,056.45). The Foglemans, who paid $30,000, are the only ones to have made a payment on this award. Darby has also sued and reached a confidential settlement with the attorney who advised her on the contract.

In the present case, Darby sued Furman on a theory of vicarious liability for Fogleman's breach of fiduciary duty and fraud. She sought the total amount to satisfy her earlier judgment along with the return of $26,500 in commission fees she paid to Furman. The trial court judge heard the case without a jury and found that Darby's breach of fiduciary duty claim was the equivalent of a claim for constructive fraud. The judge found that Darby failed to prove the reliance element of her cause of action and then dismissed her claim with prejudice. Darby alleged on appeal that the trial court: (1) abused its discretion in denying her motion to transfer the case to the jury roster; (2) erred in granting Furman a directed verdict on the fraud claim; (3) erred in finding for Furman on her breach of fiduciary duty claim; and (4) ruled improperly on her damages.

The Court of Appeals affirmed the trial court on all the issues except the return of the real estate commission and remanded that issue to the trial court for further findings. Darby then petitioned this Court for a writ of certiorari that was granted on the following issue:

Are real estate brokers allowed to retain a sales commission when they become the purchaser of the property?

### LAW/ANALYSIS

Darby argues that Furman must disgorge the real estate sales commission because Fogleman failed to satisfy his fiduciary obligations when he became the purchaser of the property. We agree. Real estate agents occupy a fiduciary relationship with their clients and are under a legal obligation

as well as a high moral duty to give loyal service to the principal. *Hamby v. St. Paul Mercury Indemn. Co.*, 217 F.2d 78, 80 (4th Cir.1954). The duty of an agent to make full disclosure to his principal of all material facts relevant to the agency is fundamental to the fiduciary relationship of principal and agent. *Bost v. Bankers Fire & Marine Ins. Co.*, 242 S.C. 274, 283, 130 S.E.2d 907, 911–12 (1963); *see also Designer Showrooms, Inc. v. Kelley*, 304 S.C. 478, 405 S.E.2d 417 (Ct.App.1991) ("A broker owes a duty to its principal to keep it fully and properly informed of all material facts.").[1]

In South Carolina, a person cannot be both the seller's agent and the purchaser of the property without an inherent conflict. *Pollitzer v. Long*, 295 S.C. 28, 30, 367 S.E.2d 18, 20 (1988); *see also Designer Showrooms, Inc. v. Kelley*, 304 S.C. 478, 405 S.E.2d 417 (Ct.App.1991) ("There is a repugnancy of one serving as both broker for a principal and purchaser for that same principal."). By becoming a member of the entity with an outstanding offer to purchase the property of his principal, Fogleman abandoned his position as an agent to sell and became a purchaser of the property. In order to complete the transaction and keep any commission for the sale, Fogleman's fiduciary duty required him to inform Darby of these material facts and obtain her express permission to continue. *See* 12 Am.Jur.2d *Brokers* § 120 (1997) ("Generally, a broker can neither purchase from, nor sell to, his or her principal, unless the later expressly consents or acquiesces to the transactions with full knowledge of all the facts and circumstances.").[2] Even though Darby could not maintain a case for breach of fiduciary duty against Furman with regard to the overall sale of the property, that does not mean

---

1. Commentators have even referred to the broker's duty of disclosure as "Perhaps the most important fiduciary duty the broker owes to the principal ..." Paula C. Murray, *The Real Estate Broker and the Buyer: Negligence and the Duty to Investigate*, 32 Vill.L.Rev. 939, 944 (1987).

2. For real estate brokers, this duty is codified at S.C.Code of Regulations R. 105–20 that requires: "No broker or salesman shall either directly or indirectly buy for himself or for a corporation or any other business in which he holds an interest or for a close relative, property listed with him or property for which he has been approached by the seller or prospective buyer to act as broker, *without first making his true position clearly known to all parties involved.*" (emphasis added).

Fogleman satisfied all his fiduciary duties and earned the commission.

■ When selling to himself, a real estate broker fails to satisfy his fiduciary duty to disclose all material facts to the principal if the broker fails to secure an agreement from the seller acknowledging both his change in position along with the seller's right to refuse the commission's payment. *See* 12 Am.Jur.2d *Brokers* § 120 (1997); *cf. Designer Showrooms, Inc. v. Kelley,* 304 S.C. 478, 405 S.E.2d 417 (Ct.App.1991) (holding that a broker was not entitled to the sales commission where he secretly sold the property to himself because he breached a fiduciary duty and had ceased to act as the seller's agent). This disclosure requirement is intended to satisfy the strict fiduciary requirements placed on an agent when the agent becomes the purchaser of the principal's property. *See* Am.Jur.2d *Brokers* § 118 (1997).

■ When selling to himself, a broker must meet the extremely high standards of his fiduciary obligation as well as carry the burden of proof to show full disclosure of his position to the principal. In a situation where the agent is on both sides of a transaction, the broker can only meet these responsibilities by obtaining an agreement of at least the same formality as the initial agreement creating the agency relationship. *Cf.* S.C.Code Ann. § 40–57–137(M) (Supp.1998) ("A [real estate broker] may act as a disclosed dual agent only with the prior informed and written consent of all parties.").[3]

In the present case Darby and Furman had a written agency agreement. Thus, in order to claim the commission, Fogleman and Furman would have to produce a written agreement signed by Darby acknowledging Fogleman as a member of Squires Creek and recognizing Darby's right to chose not to pay the commission. Oral explanations by Fogleman fully disclosing his position in Squires Creek would be insufficient to secure the commission. Fogleman admits he did not make any disclosure or obtain a waiver in writing. Darby is therefore entitled to recover the commission.

---

**3.** While not in effect at the time this dispute arose, this section governs real estate brokers acting as a "dual agent" in transactions. Here, Fogleman had an even greater conflict than mere dual agency, he became part of the purchaser of the property.

## CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is **REVERSED.**

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.