18506

Margaret B. PITTS, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

(148 S. E. (2d) 369)

*Messrs. William M. Wilson,* of Camden, and *Roberts, Jennings & Thomas,* of Columbia, *for Appellant,*

*Messrs. Murchison & West,* of Camden, *for Respondent,*

*Messrs. William M. Wilson,* of Camden, and *Roberts, Jennings & Thomas,* of Columbia, *for Appellant, in Reply,*

*Messrs. William M. Wilson,* of Camden, and *Roberts, Jennings & Thomas,* of Columbia, *for Appellant, on Re-Argument,*

*Messrs. Murchison & West,* of Camden, *for Respondent, on Re-Argument,* 

*Messrs. William M. Wilson,* of Camden, and *Roberts, Jennings & Thomas,* of Columbia, *for Appellant, on Re-Argument, in Reply,* 

May 12, 1966.

LEGGE, Acting Justice.

Action by the beneficiary of a policy of insurance on the life of her husband to recover double indemnity by reason of his accidental death. The case was tried before the Honorable Clarence E. Singletary, Presiding Judge, without a jury; appeal is from his judgment in favor of the plaintiff.

On July 1, 1920, appellant insured the life of Reuben B. Pitts under a ten-year term policy for $10,000, or $20,000 in the event that his death should result from accident. On July 30, 1925, this policy was converted into an ordinary life policy, with like provision for double indemnity in case

of death by accident, and with provision for payment of disability benefit of $100.00 per month if the insured should become disabled before age sixty. As so converted, its annual premium was $405.20, of which $10.00 was stated to be for the double indemnity coverage and $28.20 for the disability coverage, with the provision that after the insured should reach the age of sixty years the premiums to become due would be reduced by the amount of the premium charged for the disability coverage. It excluded the double indemnity coverage in case of death resulting from certain causes, among them "engaging, as a passenger or otherwise, in submarine or aeronautic operations."

On January 27, 1933, pursuant to application by the insured and the beneficiary, the double indemnity provision was amended by endorsement reading as follows:

"In accordance with the request of the insured, the double indemnity benefit is hereby modified to permit the double indemnity provision to apply if the insured's death occurs as the result of riding as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports.

"It is also understood and agreed that the entire provisions for double indemnity as included in the policy will apply only if death occurs prior to the anniversary of the policy on which the insured's age at nearest birthday is 65.

"Any premium due on and after the anniversary on which the age of the insured at nearest birthday is 65 will be reduced by the amount of premium charged for the double indemnity benefit."

In 1942, when the insured reached age sixty, appellant reduced the annual premium by $28.20, the amount charged for the disability coverage. The insured became sixty-five years of age in 1947, but in that year and each year thereafter appellant continued to bill him without reduction of the premium by the amount ($10.00) charged for the double in-

demnity benefit; and the insured continued to pay the premiums as thus billed until his death, at the age of eighty-one, on March 25, 1963.

That the insured's death resulted from accident is not disputed. Appellant paid the face amount of the policy, $10,000 but refused to pay under the double indemnity provision. Its offer to refund the double indemnity premiums paid subsequent to August 1, 1947, together with interest on each such payment, was rejected.

In her complaint respondent alleged that appellant, having failed and neglected, after the insured had reached the age of sixty-five, to reduce the premium by the amount charged for the double indemnity benefit as it was obligated to do by the terms of the 1933 endorsement before mentioned, "has waived its right to rely upon the provisions of the said endorsement and is now estopped" to deny liability for such benefit. In its answer appellant alleged that its failure to note that the premium should be reduced in 1947 was the result of a clerical error, and that the continued payment by the insured and acceptance by it of the unreduced premium after the insured had reached the age of sixty-five were the result of inadvertence and mutual mistake and were contrary to the express terms and conditions of the policy.

It appears undisputed that appellant did not discover the error in its records, and the resulting erroneous billing of premiums, until after the insured's death.

The trial judge held that by having billed the insured for the full premium and accepted payment of the same each year for sixteen years after the insured had reached the age of sixty-five years appellant had waived its right to deny coverage under the double indemnity provision of the 1933 endorsement; and he accordingly ordered judgment for the plaintiff for $10,000.00, with interest from the date on which the face amount of the policy was paid to the beneficiary. That ruling is here challenged by several exceptions.

Policy provisions under which an insurer may assert non-coverage fall into two classes: (1) those providing for forfeiture; and (2) those limiting or excluding coverage. The former may be waived; with regard to the latter, the weight of authority is said to support the view expressed in 29A Am. Jur., Insurance, Section 1135, page 289, as follows:

"The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture. Thus, while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage, or restrictions on the coverage, cannot be extended by the doctrine of waiver or estoppel."

To the same effect is the following, from 16 Appleman, Insurance Law and Practice, Section 9090, page 629:

"It has been broadly stated that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. While an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel."

See also the annotation in 113 A. L. R., at pages 857 *et seq.*

So far as it relates to waiver, the rule as above stated has been approved by this court in many cases. *Keistler Co. v. Aetna Ins. Co., Hartford, Conn.*, 124 S. C. 32, 117 S. E. 70; *Owens v. Metropolitan Life Ins. Co.*, 178 S. C. 105, 182 S. E. 322; *Hodge v. National Fidelity Ins. Co.*, 221 S. C. 33, 68 S. E. (2d) 636; *Bost v. Bankers Fire & Marine Ins. Co.*, 242 S. C. 274, 130 S. E. (2d) 907; *Johnson v. Wabash*

*Life Ins. Co.*, 244 S. C. 95, 135 S. E. (2d) 620. But we have rejected it in cases where the circumstances warranted application of the doctrine of estoppel. *Ellis v. Metropolitan Casualty Ins. Co. of N. Y.*, 187 S. C. 162, 197 S. E. 510; *Moore v. Palmetto State Life Ins. Co.*, 222 S. C. 492, 73 S. E. (2d) 688; *Johnson v. Wabash Life Ins. Co.*, *supra*.

The essential elements of equitable estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance. *Johnson v. Wabash Life Ins. Co.*, *supra*. The presence of these elements is not essential to the establishment of implied waiver, which results merely from conduct of the party against whom the doctrine is invoked from which voluntary relinquishment of his known right is reasonably inferable. But the two doctrines are related, and have this in common: that the applicability of each in a particular situation results from conduct of the party against whom it is invoked which has rendered it inequitable that he assert a right to which, in the absence of such conduct, he would be entitled.

Whether an insurer, by accepting and retaining the premium for a coverage that by the terms of the policy is excluded or terminated, may be estopped to deny such coverage, must of course depend upon the circumstances of the particular case. For estoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate. *Peoples National Bank of Greenville v. Manos Bros., Inc.*, 226 S. C. 257, 84 S. E. (2d) 857, 45 A. L. R. (2d) 1070. Where the insurer over a long period of time after the date prescribed by it for the termination of a particular coverage has continued to demand, accept and retain the premium fixed by it for that coverage, it may reasonably be inferred that the insured, who in the normal course of things relies upon the insurer's billing, has been misled by such

conduct to believe that the insurer has continued to accept the covertge. Upon the same premise, excusable ignorance on the part of the insured as to the true fact, *i. e.,* that the insurer has made a mistake in its billing, may likewise be inferred.

In the present case, as has been noted, the premium for the double indemnity coverage, $10.00, was separate and distinct from, and in addition to, that charged for the normal coverage, $367.00. Although by the terms of the policy the double indemnity coverage was to expire in 1947, when the insured became sixty-five, the undisputed fact that appellant continued for sixteen years thereafter to bill him for such coverage, and to collect and retain it, in our opinion furnished sound and adequate basis for the three elements of estoppel —ignorance, misleading, and reliance—before mentioned. The fourth element, prejudicial change of position, is also present. For not only did the insured expend the amount of such premium, in response to the erroneous billing, during each of the sixteen years between 1947 and 1963, but the insurer's claim for relief from the consequences of its error comes not until after the death of the insured and therefore, we think, too late. Cf. *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17, where the equitable doctrine of laches was held applicable as a bar to the assertion of a right by one party to a transaction against those claiming under the other party, then deceased.

We need not, and do not, decide whether the rule of non-waiver is applicable in the present case, for we think that under the facts apparent in the record here the insurer is estopped to deny the coverage in question. The issue of estoppel was before the Court; it was one of law, the essential facts being undisputed; and the result reached was the just and correct one. Affirmance in that result is proper in such case under Section 8 of Rule 4 of this Court. *Colonial Life & Accident Ins. Co. v. South Carolina Tax Commission,* 233 S. C. 129, 103 S. E. (2d)

908; *South Carolina National Bank v. Florence Sporting Goods, Inc.*, 241 S. C. 110, 127 S. E. (2d) 199.

Affirmed in result.

Moss, Acting C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.