**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-2452**

_____

FIRST FINANCIAL INSURANCE COMPANY,

        Plaintiff - Appellant,

    v.

TONYA BRUMBAUGH, as Personal Representative for the Estate
of Wanda Elaine Malmede Holland,

        Defendant – Appellee,

    and

CHAD WAYNE KESSING, SR.; EDWARD STEVE ENGLISH; GARY DENAUX;
GAREY G. GOREY; WHOLESALE TRANSMISSIONS AND AUTO REPAIR; GHA
LLC,

        Defendants.

_____

Appeal from the United States District Court for the District of
South Carolina, at Charleston.   Richard M. Gergel, District
Judge.  (2:11-cv-00554-RMG)

_____

Argued:  September 18, 2013      Decided:  January 8, 2014

_____

Before SHEDD, DUNCAN, and KEENAN, Circuit Judges.

_____

Vacated and remanded by unpublished opinion.  Judge Keenan wrote
the majority opinion, in which Judge Duncan joined.  Judge Shedd
wrote a dissenting opinion.

_____

**ARGUED**: Mark S. Barrow, SWEENY, WINGATE & BARROW, PA, Columbia, South Carolina, for Appellant.  William Mullins McLeod, Jr., MCLEOD LAW GROUP, Charleston, South Carolina, for Appellee.  **ON BRIEF**: William R. Calhoun, Jr., Aaron J. Hayes, SWEENY, WINGATE & BARROW, PA, Columbia, South Carolina, for Appellant.  Julie L. Moore, MCLEOD LAW GROUP, LLC, Charleston, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court properly applied principles of equitable estoppel under South Carolina law in requiring that an insurance carrier provide coverage to a third party not otherwise entitled to coverage under the terms of the policy at issue. Upon our review, we conclude that the district court abused its discretion in using the doctrine of estoppel to create coverage under these circumstances. We therefore vacate the district court's judgment.

I.

Appellant First Financial Insurance Co. (First Financial) issued a liability insurance policy to Gary Denaux, formerly the sole proprietor of Wholesale Transmission, an automotive transmission business located in Moncks Corner, South Carolina. The policy issued to Denaux (the policy or the Denaux policy) listed the named insured as "Gary Denaux DBA Wholesale Transmission." The term "insured" was defined in the policy to include the named insured as well as his employees.[1]

---

[1] An endorsement to the policy added the owners of the "garage premises" as additional insureds.

In the section of the policy declarations entitled "form of business," the policy listed "individual," rather than alternative options including "partnership" and "limited liability company." Under the policy, First Financial agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from 'garage operations.'"

By its terms, the policy was effective from May 23, 2007 through May 23, 2008. Under the heading "Transfer of Your Rights and Duties Under this Policy," the policy provided:

> Your rights and duties under this policy <u>may not be transferred without our written consent</u> except in the case of death of an individual named insured.

(Emphasis added).

Midway through the term of the policy, Denaux ceased operating his business. A former coworker, Edward English, opened a new automotive transmission business in the same location, also named Wholesale Transmission. English and a friend, Garey Gorey, operated the new business through a newly formed limited liability company. Upon receiving a bill addressed to Denaux at the business' address, English paid the last installment of the Denaux policy premium in February 2008.

Denaux did not attempt to cancel the policy or to transfer his coverage under the policy to English. In April 2008, as the policy was nearing its termination date, First Financial sent by

4

facsimile a blank insurance application to Lee Ann Wise, the independent insurance agent who had obtained the policy for Denaux and who also was acting as English's agent. Wise thought that the application was for a renewal of the Denaux policy, which was to expire on May 23, 2008.

On May 2, 2008, Wise sent a completed application for a policy in English's name to an underwriter for First Financial. Her facsimile transmission included a cover sheet, which stated:

> Gary Denaux is no longer the owner of this company. I made the changes on the app[lication]. I am not sure if you will need to re-quote it w[ith] the new owner [and] drivers. Please call me if you have any questions.

On June 6, 2008, First Financial issued a new policy to "Steve Edward English DBA Wholesale Transmission" (the English policy), retroactively effective as of May 23, 2008, the same day that the Denaux policy expired.

Eleven days before the expiration of the Denaux policy, but before the English policy went into effect, one of English's employees, Chad Kessing, was involved in a vehicle collision that resulted in the death of Wanda Holland (the accident). Tonya Brumbaugh, the personal representative of Holland's estate, filed a wrongful death action in a South Carolina state court against Kessing, Wholesale Transmission, Denaux, English's limited liability company, and English. First Financial later brought the present action in federal district court against

5

Kessing, English, Denaux, Gorey, Wholesale Transmission, English's limited liability company, and Brumbaugh, seeking a declaration that the Denaux policy did not provide coverage in the underlying liability lawsuit.

The district court entered default judgment against all of the defendants except Brumbaugh.[2]  The defaulting defendants therefore admitted the following:

> Mr. Denaux, the named insured under First Financial's policy, cannot be liable—directly or vicariously—for the injuries to or death of Ms. Holland.  He had sold the business and left it entirely approximately four months before Kessing's accident.
>
> Kessing was not an insured under Denaux's policy at the time of the accident.  He did not fit into the policy's "Who is an Insured" provision because he was not an employee of Denaux when the accident occurred; he was employed by Steve English in a different business than that owned by Gary Denaux.  Mr. Denaux had no "power or right to control and direct" Mr. Kessing at the time of the accident.
>
> Mr. Denaux could not, and did not, transfer his rights and duties under the policy to Steve English; [Garey] Gorey; GHA, LLC; or Wholesale Transmission and Auto Repair.  Denaux did not seek, and did not obtain, First Financial's written consent to transfer any rights under [the policy] to any other party.

See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)) (explaining that, when a defendant defaults, he admits the plaintiff's factual allegations as

---

[2]  Brumbaugh also defaulted but successfully moved to set aside default.

6

true). The district court thereafter entered a default judgment order holding that the Denaux policy did not provide coverage for any of the defaulted defendants.

After entering the default judgment order, and after considering the cross-motions for summary judgment filed by First Financial and Brumbaugh, the district court held as a matter of law that the Denaux policy did not provide coverage for the accident, because First Financial had not consented in writing to the transfer of Denaux's rights under the policy to English and his employees. Following this determination, the district court held a bench trial to resolve the court's additional question whether First Financial "should be equitably estopped from denying coverage, notwithstanding the fact that coverage does not technically exist under the terms of the Policy."

At the conclusion of the bench trial, the district court reiterated that the Denaux policy did not cover the accident, but nevertheless held that First Financial was equitably estopped from denying coverage because, by its conduct, First Financial had reasonably induced English to believe that Denaux's rights under the policy had been transferred. First Financial timely appealed from the district court's judgment imposing equitable estoppel in this case.

We review the district court's decision to apply equitable estoppel for abuse of discretion. Am. Bankers Ins. Grp. v. Long, 453 F.3d 623, 629 (4th Cir. 2006). Under the facts of this case, we note at the outset that English never was a named insured under the Denaux policy, and was not otherwise a party to an insurance contract with First Financial at any time before the accident.[3] See Auto-Owners Ins. Co. v. Rhodes, No. 27316, 2013 S.C. LEXIS 248, at *21-22 (S.C. Sept. 25, 2013) (citations omitted) (citing cases for the proposition that, when an insurance policy is issued for a sole proprietorship, the policy is considered to be issued to the proprietor personally).

Under South Carolina law, the doctrine of equitable estoppel applies when the party to be estopped (1) engages in "conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) [has] the intention that such conduct shall be acted upon by the other party; and (3)

---

[3] We observe that Brumbaugh was the only party who attempted to establish coverage through equitable estoppel, given the default of all her co-defendants. Because we hold that equitable estoppel cannot be employed to create coverage under the Denaux policy for the accident, we do not consider the effect of English's default on Brumbaugh's ability to assert equitable estoppel derivatively through English.

[has] actual or constructive knowledge of the real facts." Strickland v. Strickland, 650 S.E.2d 465, 470 (S.C. 2007). Estoppel can be established through a party's silence when that party owes the other a duty to speak but "refrains from doing so and thereby leads the other to believe in the existence of an erroneous state of facts." S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 751 (S.C. 1993) (citation omitted). The party asserting estoppel must demonstrate "(1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped." Strickland, 650 S.E.2d at 470.

Although estoppel is a flexible doctrine that requires consideration of the relative equities between the parties, see Pitts v. N.Y. Life Ins. Co., 148 S.E.2d 369, 371-72 (S.C. 1966), the doctrine's reach is not unlimited. In Pitts, the Supreme Court of South Carolina discussed the general principle of insurance law that conditions or restrictions on coverage may not be extended by waiver or estoppel. Id. at 371 (citations omitted). According to this principle, estoppel "cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect the rights reserved therein." Id.

9

The South Carolina court held that this general principle is not binding when circumstances warrant application of the doctrine. Pitts, 148 S.E.2d at 371. Addressing such a circumstance, the court carved out a narrow exception in which, after the insured's coverage has terminated, the insurer retains premium payments made by the insured over a period of time. In Pitts' case such payments extended for a period of 16 years. Id. at 370-71.

Holding that the insurance carrier was estopped from denying coverage, the court in Pitts explained that

> [w]here the insurer over a long period of time after the date prescribed by it for the termination of a particular coverage has continued to demand, accept and retain the premium fixed by it for that coverage, it may be reasonably inferred that the insured, who in the normal course of things relies upon the insurer's billing, has been misled by such conduct to believe that the insurer has continued to accept the coverage.

Id. at 372.

The court in Jost v. Equitable Life Assurance Society of the United States, 248 S.E.2d 778 (S.C. 1978), similarly concluded that, because the insurer knew that coverage had expired but nevertheless collected premium payments from the insured, the carrier's actions could only indicate that the carrier either intended to provide additional coverage, intended to provide the insured with nothing, despite the payments, or had collected the payments by mistake, which explanation the

10

carrier had not asserted.  Id. at 779.  Therefore, relying on Pitts, the court in Jost held that the insurer was estopped from denying coverage.  248 S.E.2d at 780.

In the present case, Brumbaugh asserts that English and his employees are entitled to the benefits of coverage under the Denaux policy, even though English was not a named insured under the policy.  Relying on Pitts and Jost, she contends that First Financial misled English into believing that the Denaux policy provided him with coverage, by failing to return the premium on Denaux's policy after learning that Denaux had ceased operating his business.  In our view, Brumbaugh's requested result would impermissibly "create a primary liability" by estoppel, because the special circumstances warranting application of the doctrine in Pitts and Jost are absent here.

In both those cases, the doctrine of equitable estoppel was applied because the insurance carrier had misled its named insured, with whom the carrier had an existing contractual relationship, to think that coverage continued to exist.  Here, in contrast, English was not a named insured under the Denaux policy, and First Financial had no duty to inform English or his agent, Wise, that English lacked coverage under the existing

11

Denaux policy.[4]  Further, at the time of the accident, the Denaux policy was still in effect for Denaux and his covered former employees, and English had not yet obtained his own policy.[5]  For these reasons, we conclude that Brumbaugh's reliance on <u>Pitts</u> and <u>Jost</u> is misplaced.  She cannot escape the general principle of insurance law, as applied by the South Carolina courts, which ordinarily does not allow use of the doctrine of estoppel to create insurance coverage when an insurer has not misled its insured to think that the risk in question was covered.  See

---

[4] Under South Carolina law, "as a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so." <u>Houck v. State Farm Fire & Cas. Ins. Co.</u>, 620 S.E.2d 326, 329 (S.C. 2005).  A duty can be created by implication if the insurer received compensation beyond the payment of the premium, the insured clearly requested the advice of the insurer, or "there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on." <u>Id.</u> (citation omitted).  None of these exceptions to the general rule apply here.

[5] In concluding that First Financial had misled English into believing that he was covered under the Denaux policy, the district court relied partially on the fact that First Financial failed to cancel the policy after receiving notice on May 2, 2008 that Denaux had ceased operating Wholesale Transmission.  Under the terms of the policy, however, First Financial could unilaterally cancel the policy only under limited circumstances.  Aside from cancellation for non-payment of premiums, a circumstance not applicable in this case, First Financial could cancel the policy only after providing Denaux with 30 days' notice.  Accordingly, had First Financial sought to cancel the policy after receiving Wise's facsimile on May 2, 2008, the required 30-day notice period would have eclipsed both the date of the accident and the date on which the policy would have expired by its own terms.

12

Pitts, 148 S.E.2d at 371; Standard Fire Ins. Co. v. Great Am. Ins. Co., 392 S.E.2d 460, 462 (S.C. 1990).

We also observe that imposition of primary liability coverage in the present case would not promote the equitable considerations underlying the doctrine of estoppel. Such imposition would require that an insurance carrier, here, First Financial, provide coverage for a party and associated risks that: (1) were not contemplated when the carrier originally entered into the insurance contract with its insured; and (2) for which no premium was paid.

Moreover, Brumbaugh cannot prove a required element of equitable estoppel, namely, that English did not know or have the opportunity to know the truth about the transferability of rights under the Denaux policy. Although English and Wise may have had an honest misunderstanding about the state of English's coverage, the face of the policy makes plain that Denaux's rights could not be transferred absent written consent from First Financial.

Wise, as the insurance agent of both Denaux and English, had access to the Denaux policy and, therefore, had the ability to correct her mistaken assumption that the policy automatically covered English's new business. Nevertheless, she did not seek clarification or a response from First Financial on the facsimile cover page, nor did she indicate to First Financial

13

that she thought that the rights under the Denaux policy had been transferred to English. English therefore cannot show the "lack of knowledge, and the means of knowledge, of the truth as to the facts in question" necessary to apply equitable estoppel. Strickland, 650 S.E.2d at 470; see also S. Dev. Land & Golf Co., 426 S.E.2d at 751 ("One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been [misled].").[6]

## III.

In sum, we hold that the district court abused its discretion in holding that First Financial was equitably estopped from denying coverage for the accident. Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

---

[6] Because we conclude that Brumbaugh's assertion of equitable estoppel fails as an improper imposition of coverage, and because Wise and English had the means to discover the transferability requirements of the Denaux policy, we do not address whether the other elements of equitable estoppel are satisfied.

14

SHEDD, Circuit Judge, dissenting:

I believe the majority has made several critical mistakes in its analysis. It has required the accident victim to prove an additional element not mandated by the law of equitable estoppel, and it has failed to focus on the crucial information known only by the insurance company, which is the basis for this estoppel. This knowledge is not, as the majority believes, the transfer provision written into the insurance contract, but instead the fact that the company did not intend to waive that provision. The result of this flawed analysis means that the insurance company will succeed in avoiding even potential liability for the fatal accident caused by its insured,[1] and which victim the insurance company tried to silence in court. Under the circumstances, I respectfully dissent.

First Financial Insurance Co. ("First Financial"), issued an insurance policy to Gary Denaux, doing business as Wholesale Transmission ("WT"), covering the period of May 23, 2007, to May 23, 2008. WT is an auto-repair shop started by Gary Denaux, which Edward English later joined as a partner. The two ran the company together from late 2006 to late 2007. Around the end of 2007 or beginning of 2008, Denaux left the business. WT was then

---

[1] As pointed out by the court below, despite equitable estoppel, First Financial can still assert it has no financial responsibility for the accident. <u>See</u> J.A. 313.

15

run by English and Gary Gorey, after Gorey bought out Denaux's interest. WT operated in the same location, and the First Financial policy remained in place. In February of 2008, English paid the final insurance premium for the 2007–2008 policy with a check signed in his name.

In April of 2008, Lee Ann Wise, an insurance agent for WT and English, received a blank application from First Financial for insurance for WT, which she understood to be an application for the renewal of the then-existing policy. On the application, Wise asked for the renewal to be effective on May 23, 2008, the date the original coverage period was to terminate, which would ensure no lapse of coverage. As with the original application, the renewal application listed the name of the business as Wholesale Transmission, the same address for WT, the applicant's business as a "transmission repair shop," and the same amount of coverage. On May 2, 2008, Wise faxed the completed application to First Financial, with a cover letter that stated,

> Pat-[2]
>
> Gary Denaux is no longer the owner of this company. I made the changes on the app, I am not sure if you will need to re-quote it w/ the new owner & drivers. Please call me if you have any questions. Thank you, Lee Ann.

---

[2] Pat Dandridge was an employee of Johnson & Johnson, which is an agent of First Financial. J.A. 320.

J.A. 114 (emphasis added). First Financial never contacted Wise regarding the information in her cover letter or in the application, nor did it inform her the current policy would not cover WT if Denaux was no longer the owner. Further, First Financial did not refund any of the premium to WT after discovering Denaux was no longer involved with WT. On May 12, 2008, Ms. Wanda Holland was killed in a car accident with one of WT's employees. Ms. Holland, through her daughter, Tonya Brumbaugh, sued WT (and others) in state court because of the accident.

The case before us represents First Financial's attempts to avoid liability coverage for the auto accident. First Financial brought a declaratory judgment action in district court against Brumbaugh (and others) seeking a determination that it was not required to provide coverage for the accident that caused Ms. Holland's death. After suing Brumbaugh in the declaratory judgment action, First Financial then claimed she had no standing to even assert First Financial's coverage.

The district court first denied First Financial's attack on Brumbaugh's standing. Then, after a bench trial, the district court estopped First Financial from denying coverage based on First Financial's position that it had not given written consent under the policy for coverage to be transferred to WT operating without Denaux.

17

In arguing that we should not even hear from Brumbaugh, First Financial incorrectly relies on South Carolina case law that explains when a party may bring a direct cause of action against an insurer. Brief of Appellant at 11–12. Here, Brumbaugh did not bring a direct action against First Financial, but rather, was brought into court by First Financial. Brumbaugh clearly has standing to defend herself in this action under South Carolina law. Cases limiting direct actions are inapplicable. See, e.g., Major v. Nat'l Indem. Co., 229 S.E.2d 849 (S.C. 1976) (distinguishing between case law allowing joinder of insurance companies by third parties versus a direct suit solely against an insurance company by a third party). South Carolina courts allow third parties to seek contract reformation of insurance contracts to which they are not a party. George v. Empire Fire & Marine Ins. Co., 519 S.E.2d 107, 110 (S.C. Ct. App. 1999) rev'd on other grounds, 545 S.E.2d 500 (S.C. 2001), ("Ordinarily, a party requesting reformation must have been a party to the written document or in privity with a party. However, a third-party beneficiary to an insurance contract may bring such an action." (citations omitted)). Accordingly, Brumbaugh has standing to defend herself in this

18

declaratory action, regardless of whether she has a direct cause of action against the insurer under South Carolina law.[3]

Next, First Financial argues that insurance coverage may not be extended by equitable estoppel. See Brief of Appellant at 22. First Financial is incorrect; South Carolina does allow insurance coverage to be extended by estoppel. See Standard Fire Co. v. Marine Contracting & Towing Co., 392 S.E.2d 460, 462 (S.C. 1990); Pitts v. New York Life Ins. Co., 148 S.E.2d 369,

---

[3] First Financial's argument on standing not only contravenes South Carolina law but is contrary to the insurance principles recognized both in this Circuit and others. For example, as we previously stated in Penn Am. Ins. Co. v. Valade, 28 F. App'x 253 (4th Cir. 2002),

> [T]he third party's interest in defining the scope of insurance coverage is independent of the interest of the insured. When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing, independent of that of the insured, to defend itself in the declaratory judgment proceeding. Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 353 (3d Cir. 1986) (stating that injured third party "ha[s] standing to defend the declaratory judgment action despite the absence of . . . the actual insured"); Hawkeye-Sec. Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962) ("It would be anomalous to hold here that an actual controversy exists between [an injured third party] and [an insurer] and yet deny [the injured third party] the right to participate in the controversy."). In this regard, it would be anomalous not to permit the injured third party an opportunity to present its case against the insurer, which initially brought the declaratory judgment action, after the insured defaulted.

Id. at 256–57 (emphasis added).

19

372 (S.C. 1966) ("[E]stoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate.").

The question here is whether the district court erred in finding that the circumstances present in this case met South Carolina's estoppel requirements. We review the district court decision under the abuse of discretion standard. The district court abused its discretion only if it made an error of law or clearly erred in its factual findings. Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 629 (4th Cir. 2006).

> We review factual findings by the district court under the clearly erroneous standard set forth in Federal Rule of Civil Procedure 52(a). Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003); Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 n.18 (4th Cir. 1992). Our scope of review is narrow; we do not exercise de novo review of factual findings or substitute our version of the facts for that found by the district court. Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir. 1995). Instead, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985). Thus, facts found by the district court are conclusive on appeal "unless they are plainly wrong." Jiminez, 57 F.3d at 378-79.

Walton v. Johnson, 440 F.3d 160, 173 (4th Cir. 2006). For the reasons discussed below, the district court made no error of law; and as the factfinder, that court clearly could find the

20

elements of equitable estoppel had been met based on the circumstances in this case.

Although the majority correctly rejects First Financial's erroneous view that South Carolina does not allow the extension of insurance coverage under equitable estoppel, it otherwise misreads South Carolina law. The majority conflates circumstances which allow for the application of equitable estoppel in specific cases with the requirements of the general rule. Stated another way, the cases the majority relies on do not add an additional requirement to equitable estoppel in South Carolina. Properly applying the law of equitable estoppel, we must affirm the district court.

As relevant here, the elements for equitable estoppel in South Carolina are:

> As to the estopped party, . . . (1) . . . conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party's subsequent assertions; (2) intention or expectation that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. As to the party claiming estoppel, the essential elements are: (1) lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts; (2) reasonable reliance on the other party's conduct; and (3) a prejudicial change in position. . . . Estoppel by silence arises when the estopped party owes a duty to speak to the other party but refrains from doing so, thereby leading the other party to believe in an erroneous state of facts.

21

Provident Life & Acc. Ins. Co. v. Driver, 451 S.E.2d 924, 928 (S.C. Ct. App. 1994) (citation omitted). Further, a duty to speak may arise

> where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied[.]

Hedgepath v. Am. Tel. & Tel. Co., 559 S.E.2d 327, 339 (S.C. Ct. App. 2001). In the insurance context specifically,

> [a] duty may be imposed . . . if the agent . . . undertakes to advise the insured. . . . [A] duty can be impliedly created. In determining whether an implied duty has been created, courts consider several factors, including whether: (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.

Houck v. State Farm Fire & Cas. Ins. Co., 620 S.E.2d 326, 329 (S.C. 2005) (citations and internal quotation marks omitted).

At trial, the evidence necessary to establish each element of equitable estoppel was presented to the district court as the factfinder.

First, there was "conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party's subsequent assertions." Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. First Financial's conduct conveyed

22

the impression that English was covered because by not saying anything to Wise or English, First Financial signified it was waiving the no transfer provision in the original policy.

Second, there was an "intention or expectation that such conduct be acted upon by the other party." Id. First Financial should have expected that by not saying anything at all in response to Wise's fax, English would believe he had continuing coverage. Further, the existence of continuing coverage could be gleaned from the fact that the new policy was to begin the exact minute the old coverage period expired. The factfinder could certainly find that English would thereby understand that he was continually covered and would decide to forego obtaining other insurance. See Moore v. Palmetto State Life Ins. Co., 73 S.E.2d 688, 693 (S.C. 1952).

Third, First Financial had "actual or constructive knowledge of the real facts." Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. First Financial knew or should have known that English was seeking continuing coverage and that it did not intend to waive the no transfer provision in the contract to allow for that coverage. On this point, the majority mistakenly believes the critical fact is the no transfer provision of the insurance contract, but it is not. The "real" fact is that First Financial did not waive that provision.

23

Fourth, the party asserting estoppel must show a "lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts." Id. Here, the majority focuses on the wrong "facts." The majority asserts that Brumbaugh cannot establish this element because "the face of the policy makes plain that Denaux's rights could not be transferred absent written consent from First Financial." But again, the majority fails to realize that the critical issue is not whether English could have found the no transfer provision in reading the contract, but rather, that First Financial had no intention of waiving it.

Without question, First Financial had the authority to waive the provision requiring its written consent for a transfer. Insurance companies can waive any provision meant to protect them and can even waive provisions that define how a proper waiver is to occur. Gandy v. Orient Ins. Co., 29 S.E. 655, 656 (S.C. 1898) ("An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument."). Thus, First Financial clearly could waive the requirement that its consent to transfer had to be in writing. Accepting, as the

24

majority does, that Wise knew of the transfer provision, she is also charged with having knowledge of the law on waiver, and based on her course of dealing with First Financial, she thought First Financial was waiving the provision. Neither Wise nor English had any way to discover that First Financial did not intend to waive that provision because First Financial did not respond in a manner to put English on notice that there was a problem or issue pursuant to Wise's fax.

Fifth, there was "reasonable reliance on the other party's conduct." Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. English, through his agent, Wise, believed that by its silence, First Financial was consenting to a transfer of the policy. Thus, Wise thought First Financial's silence meant First Financial was providing English with continuing coverage. There is no doubt this reliance was clearly reasonable; First Financial's representative admitted as much at trial. J.A. 180.

Sixth, there was "a prejudicial change in position." Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. Wise testified that if First Financial had notified her that there was any problem whatsoever with continuing coverage for English, she would have immediately obtained other insurance for English to prevent any lapse in coverage. Thus, English had a prejudicial change in position when he did not get other insurance for that time period.

25

The two additional elements for estoppel by silence are (1) the duty to speak and (2) a failure to speak that misleads the injured party. Id. They are both present here. The majority believes that "First Financial had no duty to inform English or his agent, Wise, that English lacked coverage" because English did not have an "existing contractual relationship" with First Financial. The majority apparently finds that requirement in Jost v. Equitable Life Assurance Soc'y of the U.S., 248 S.E.2d 778 (S.C. 1978) and Pitts, 148 S.E.2d 369. There, the South Carolina Supreme Court estopped insurance companies from denying coverage because they continued to accept premiums from individuals after their insurance policies had terminated. In these cases, the court applied estoppel in a factual situation where there was an existing contractual relationship, but the court did not make such an existing relationship a requirement for equitable estoppel. See S. Dev. Land & Golf Co., Ltd. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 750 (S.C. 1993) (listing the elements of equitable estoppel, but not including an existing relationship as a requirement); Provident Life & Acc. Ins. Co., 451 S.E.2d at 928 (same).

There is no requirement for an existing contractual relationship, or any type of prior relationship, for there to be a duty to speak in South Carolina. See, e.g., Moore, 73 S.E.2d at 693 (estopping an insurance company from denying coverage of

26

an individual who had not yet formed a contract with the company, and treating the company's failure to speak as an implied acceptance). In fact, in South Carolina, as little as a first-time phone conversation between the parties can be sufficient to create a duty to speak. See S. Dev. Land & Golf Co., Ltd., 426 S.E.2d at 750-51. For example, in Southern Development Land and Golf Co., an individual interested in purchasing property for development called the power company to inquire about exposed power lines located on the property and advised the company of his need to avoid any exposed power lines. Id. The power company told the caller the current lines could be buried, but failed to tell him of its finalized plans to replace those current lines with exposed high voltage lines. Id. Because the power company knew the man needed to avoid all such exposed lines and also knew it had plans to build new exposed lines on the property, this superior knowledge was enough to create a duty to speak, even though there was no prior relationship between the parties before this phone call. Id.

The court found a duty to speak under the circumstances of this case.[4] That finding is justified in several ways. First, there was an implied trust and confidence based on both the

---

[4] "Plaintiff could have informed [English] that it did not consent to a transfer of rights under the Policy and that additional coverage must be purchased for the period up until May 23, 2008." J.A. 326, n.9.

circumstances of the case and the nature of the course of dealings between Wise, as English's agent, and First Financial. See Hedgepath, 559 S.E.2d at 339.

Second, under South Carolina law, there may be a duty to speak in the insurance context if there is an implied undertaking to advise an applicant. Here, Wise's fax could certainly be construed as a request for advice. Further, the testimony indicated "there [was] a course of dealing [between Wise and First Financial] over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice [was] being sought and relied on." Houck, 620 S.E.2d at 329. The course of dealing between First Financial and Wise was such that whenever there was any problem with an individual's coverage or application, First Financial would advise her of it. Here, based on their prior course of dealing, Wise was asking whether anything further needed to be done to ensure that English had continuing coverage. Under these facts, a duty to speak would arise under South Carolina law.

As for the second additional element of estoppel by silence, First Financial's failure to speak did have the effect of misleading English. First Financial's failure to speak had the effect of causing both Wise and English to believe English had continuing coverage. Wise testified that based on her course of dealing with First Financial, the fact First Financial did

28

not contact her after she sent the fax signified there was no problem with English's continuing coverage. Therefore, this element of estoppel by silence is met.

In conclusion, I do not believe the majority has correctly applied the law of equitable estoppel to the circumstances of this case. It has added a requirement that the parties have a pre-existing relationship and it has focused on the contract language rather than the insurance company's failure to disclose it was not waiving that contract provision. The district court correctly followed South Carolina law, and the majority has not made any real argument that the district court factfinding was clearly erroneous. I believe reversing the district court is an error and such a reversal certainly creates a harsh result for the innocent victim. For these reasons, I respectfully dissent.