Vacated and remanded by unpublished opinion. Judge KEENAN wrote the majority opinion, in which Judge DUNCAN joined. Judge SHEDD wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
BARBARA MILANO KEENAN, Circuit Judge:
In this appeal, we consider whether the district court properly applied principles of equitable estoppel under South Carolina law in requiring that an insurance carrier provide coverage to a third party not otherwise entitled to coverage under the terms of the policy at issue. Upon our review, we conclude that the district court abused its discretion in using the doctrine of estoppel to create coverage under these circumstances. We therefore vacate the district court’s judgment.
I.
Appellant First Financial Insurance Co. (First Financial) issued a liability insurance policy to Gary Denaux, formerly the sole proprietor of Wholesale Transmission, an automotive transmission business located in Moncks Corner, South Carolina. The policy issued to Denaux (the policy or the Denaux policy) listed the named insured as “Gary Denaux DBA Wholesale Transmission.” The term “insured” was defined in the policy to include the named insured as well as his employees.[1]
In the section of the policy declarations entitled “form of business,” the policy listed “individual,” rather than alternative options including “partnership” and “limited liability company.” Under the policy, First Financial agreed to “pay all sums an ‘insured’ legally must pay as damages because of ‘bodily injury[1] or ‘property damage’ ... caused by an ‘accident’ and resulting from ‘garage operations.’ ”
By its terms, the policy was effective from May 23, 2007 through May 23, 2008. Under the heading “Transfer of Your Rights and Duties Under this Policy,” the policy provided:
Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
(Emphasis added).
Midway through the term of the policy, Denaux ceased operating his business. A former coworker, Edward English, opened a new automotive transmission business in the same location, also named Wholesale Transmission. English and a friend, Gar-ey Gorey, operated the new business through a newly formed limited liability company. Upon receiving a bill addressed to Denaux at the business’ address, English paid the last installment of the De-naux policy premium in February 2008.
Denaux did not attempt to cancel the policy or to transfer his coverage under the policy to English. In April 2008, as the policy was nearing its termination date, First Financial sent by facsimile a blank insurance application to Lee Ann Wise, the independent insurance agent who had obtained the policy for Denaux and who also was acting as English’s agent. Wise thought that the application was for a renewal of the Denaux policy, which was to expire on May 23, 2008.
*284 On May 2, 2008, Wise sent a completed application for a policy in English’s name to an underwriter for First Financial. Her facsimile transmission included a cover sheet, which stated:
Gary Denaux is no longer the owner of this company. I made the changes on the application]. I am not sure if you will need to re-quote it w[ith] the new owner [and] drivers. Please call me if you have any questions.
On June 6, 2008, First Financial issued a new policy to “Steve Edward English DBA Wholesale Transmission” (the English policy), retroactively effective as of May 23, 2008, the same day that the Denaux policy expired.
Eleven days before the expiration of the Denaux policy, but before the English policy went into effect, one of English’s employees, Chad Kessing, was involved in a vehicle collision that resulted in the death of Wanda Holland (the accident). Tonya Brumbaugh, the personal representative of Holland’s estate, filed a wrongful death action in a South Carolina state court against Kessing, Wholesale Transmission, Denaux, English’s limited liability company, and English. First Financial later brought the present action in federal district court against Kessing, English, De-naux, Gorey, Wholesale Transmission, English’s limited liability company, and Brumbaugh, seeking a declaration that the Denaux policy did not provide coverage in the underlying liability lawsuit.
The district court entered default judgment against all of the defendants except Brumbaugh.[2] The defaulting defendants therefore admitted the following:
Mr. Denaux, the named insured under First Financial’s policy, cannot be liable — directly or vicariously — for the injuries to or death of Ms. Holland. He had sold the business and left it entirely approximately four months before Kess-ing’s accident.
Kessing was not an insured under De-naux’s policy at the time of the accident. He did not fit into the policy’s “Who is an Insured” provision because he was not an employee of Denaux when the accident occurred; he was employed by Steve English in a different business than that owned by Gary Denaux. Mr. Denaux had no “power or right to control and direct” Mr. Kessing at the time of the accident.
Mr. Denaux could not, and did not, transfer his rights and duties under the policy to Steve English; [Garey] Gorey; GHA, LLC; or Wholesale Transmission and Auto Repair. Denaux did not seek, and did not obtain, First Financial’s written consent to transfer any rights under [the policy] to any other party.
See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n. 2 (4th Cir.2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir.2001)) (explaining that, when a defendant defaults, he admits the plaintiffs factual allegations as true). The district court thereafter entered a default judgment order holding that the Denaux policy did not provide coverage for any of the defaulted defendants.
After entering the default judgment order, and after considering the cross-motions for summary judgment filed by First Financial and Brumbaugh, the district court held as a matter of law that the Denaux policy did not provide coverage for the accident, because First Financial had not consented in writing to the transfer of Denaux’s rights under the policy to English and his employees. Following this determination, the district court held a bench trial to resolve the court’s additional *285 question whether First Financial “should be equitably estopped from denying coverage, notwithstanding the fact that coverage does not technically exist under the terms of the Policy.”
At the conclusion of the bench trial, the district court reiterated that the Denaux policy did not cover the accident, but nevertheless held that First Financial was equitably estopped from denying coverage because, by its conduct, First Financial had reasonably induced English to believe that Denaux’s rights under the policy had been transferred. First Financial timely appealed from the district court’s judgment imposing equitable estoppel in this case.
II.
We review the district court’s decision to apply equitable estoppel for abuse of discretion. Am. Bankers Ins. Grp. v. Long, 453 F.3d 623, 629 (4th Cir.2006). Under the facts of this case, we note at the outset that English never was a named insured under the Denaux policy, and was not otherwise a party to an insurance contract with First Financial at any time before the accident.[3] See Auto-Owners Ins. Co. v. Rhodes, 405 S.C. 584, 748 S.E.2d 781, 789 (2013) (citations omitted) (citing cases for the proposition that, when an insurance policy is issued for a sole proprietorship, the policy is considered to be issued to the proprietor personally).
Under South Carolina law, the doctrine of equitable estoppel applies when the party to be estopped (1) engages in “conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2)[has] the intention that such conduct shall be acted upon by the other party; and (3)[has] actual or constructive knowledge of the real facts.” Strickland v. Strickland, 375 S.C. 76, 650 S.E.2d 465, 470 (2007). Estoppel can be established through a party’s silence when that party owes the other a duty to speak but “refrains from doing so and thereby leads the other to believe in the existence of an erroneous state of facts.” S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 311 S.C. 29, 426 S.E.2d 748, 751 (1993) (citation omitted). The party asserting estoppel must demonstrate “(1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in rebanee on the conduct of the party being estopped.” Strickland, 650 S.E.2d at 470.
Although estoppel is a flexible doctrine that requires consideration of the relative equities between the parties, see Pitts v. N.Y. Life Ins. Co., 247 S.C. 545, 148 S.E.2d 369, 371-72 (1966), the doctrine’s reach is not unlimited. In Pitts, the Supreme Court of South Carolina discussed the general principle of insurance law that conditions or restrictions on coverage may not be extended by waiver or estoppel. Id. at 371 (citations omitted). According to this principle, estoppel “cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect the rights reserved therein.” Id.
The South Carolina court held that this general principle is not binding when circumstances warrant application of the doc *286 trine. Pitts, 148 S.E.2d at 371. Addressing such a circumstance, the court carved out a narrow exception in which, after the insured’s coverage has terminated, the insurer retains premium payments made by the insured over a period of time. In Pitts’ case such payments extended for a period of 16 years. Id. at 370-71.
Holding that the insurance carrier was estopped from denying coverage, the court in Pitts explained that
[w]here the insurer over a long period of time after the date prescribed by it for the termination of a particular coverage has continued to demand, accept and retain the premium fixed by it for that coverage, it may be reasonably inferred that the insured, who in the normal course of things relies upon the insurer’s billing, has been misled by such conduct to believe that the insurer has continued to accept the coverage.
Id. at 372.
The court in Jost v. Equitable Life Assurance Society of the United States, 271 S.C. 492, 248 S.E.2d 778 (1978), similarly concluded that, because the insurer knew that coverage had expired but nevertheless collected premium payments from the insured, the carrier’s actions could only indicate that the carrier either intended to provide additional coverage, intended to provide the insured with nothing, despite the payments, or had collected the payments by mistake, which explanation the carrier had not asserted. Id. at 779. Therefore, relying on Pitts, the court in Jost held that the insurer was estopped from denying coverage. 248 S.E.2d at 780.
In the present case, Brumbaugh asserts that English and his employees are entitled to the benefits of coverage under the Denaux policy, even though English was not a named insured under the policy. Relying on Pitts and Jost, she contends that First Financial misled English into believing that the Denaux policy provided him with coverage, by failing to return the premium on Denaux’s policy after learning that Denaux had ceased operating his business. In our view, Brumbaugh’s requested result would impermissibly “create a primary liability” by estoppel, because the special circumstances warranting application of the doctrine in Pitts and Jost are absent here.
In both those cases, the doctrine of equitable estoppel was applied because the insurance carrier had misled its named insured, with whom the carrier had an existing contractual relationship, to think that coverage continued to exist. Here, in contrast, English was not a named insured under the Denaux policy, and First Financial had no duty to inform English or his agent, Wise, that English lacked coverage under the existing Denaux policy.[4] Further, at the time of the accident, the De-naux policy was still in effect for Denaux and his covered former employees, and English had not yet obtained his own policy.[5] For these reasons, we conclude that *287 Brumbaugh’s reliance on Pitts and Jost is misplaced. She cannot escape the general principle of insurance law, as applied by the South Carolina courts, which ordinarily does not allow use of the doctrine of es-toppel to create insurance coverage when an insurer has not misled its insured to think that the risk in question was covered. See Pitts, 148 S.E.2d at 371; Standard Fire Ins. Co. v. Great Am. Ins. Co., 301 S.C. 418, 392 S.E.2d 460, 462 (1990).
We also observe that imposition of primary liability coverage in the present case would not promote the equitable considerations underlying the doctrine of estoppel. Such imposition would require that an insurance carrier, here, First Financial, provide coverage for a party and associated risks that: (1) were not contemplated when the carrier originally entered into the insurance contract with its insured; and (2) for which no premium was paid.
Moreover, Brumbaugh cannot prove a required element of equitable estoppel, namely, that English did not know or have the opportunity to know the truth about the transferability of rights under the De-naux policy. Although English and Wise may have had an honest misunderstanding about the state of English’s coverage, the face of the policy makes plain that De-naux’s rights could not be transferred absent written consent from First Financial.
Wise, as the insurance agent of both Denaux and English, had access to the Denaux policy and, therefore, had the ability to correct her mistaken assumption that the policy automatically covered English’s new business. Nevertheless, she did not seek clarification or a response from First Financial on the facsimile cover page, nor did she indicate to First Financial that she thought that the rights under the Denaux policy had been transferred to English. English therefore cannot show the “lack of knowledge, and the means of knowledge, of the truth as to the facts in question” necessary to apply equitable es-toppel. Strickland, 650 S.E.2d at 470; see also S. Dev. Land & Golf Co., 426 S.E.2d at 751 (“One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been [misled].”).[6]
III.
In sum, we hold that the district court abused its discretion in holding that First Financial was equitably estopped from denying coverage for the accident. Accordingly, we vacate the district court’s judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

. An endorsement to the policy added the owners of the "garage premises” as additional insureds.

. Brumbaugh also defaulted but successfully moved to set aside default.

. We observe that Brumbaugh was the only party who attempted to establish coverage through equitable estoppel, given the default of all her co-defendants. Because we hold that equitable estoppel cannot be employed to create coverage under the Denaux policy for the accident, we do not consider the effect of English’s default on Brumbaugh's ability to assert equitable estoppel derivatively through English.

. Under South Carolina law, “as a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so.” Houck v. State Farm Fire & Cas. Ins. Co., 366 S.C. 7, 620 S.E.2d 326, 329 (2005). A duty can be created by implication if the insurer received compensation beyond the payment of the premium, the insured clearly requested the advice of the insurer, or "there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.” Id. (citation omitted). None of these exceptions to the general rule apply here.

. In concluding that First Financial had misled English into believing that he was covered under the Denaux policy, the district court relied partially on the fact that First Financial failed to cancel the policy after receiving no *287 tice on May 2, 2008 that Denaux had ceased operating Wholesale Transmission.
Under the terms of the policy, however, First Financial could unilaterally cancel the policy only under limited circumstances. Aside from cancellation for non-payment of premiums, a circumstance not applicable in this case, First Financial could cancel the policy only after providing Denaux with 30 days’ notice. Accordingly, had First Financial sought to cancel the policy after receiving Wise’s facsimile on May 2, 2008, the required 30-day notice period would have eclipsed both the date of the accident and the date on which the policy would have expired by its own terms.

. Because we conclude that Brumbaugh’s assertion of equitable estoppel fails as an improper imposition of coverage, and because Wise and English had the means to discover the transferability requirements of the Denaux policy, we do not address whether the other elements of equitable estoppel are satisfied.