# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Calvin Felder, Claimant,

v.

Central Masonry Inc. & Arnold Construction Co., Employer, and AmGuard Insurance Co./Old Republic Insurance Co., and South Carolina Uninsured Employers Fund, Carriers, Defendants,

Of which AmGuard Insurance Co. is the Appellant and Central Masonry Inc. and South Carolina Uninsured Employers Fund are the Respondents.

Appellate Case No. 2018-000939

---

Appeal From The Workers' Compensation Commission

---

Opinion No. 5852
Heard April 15, 2021 – Filed September 1, 2021

---

## AFFIRMED

---

George D. Gallagher, of Speed, Seta, Martin, Trivett & Stubley, LLC, of Columbia, for Appellant.

Jonathan R. Hendrix, of Hendrix & Steigner, of West Columbia, for Respondent Central Masonry.

Lisa C. Glover, of the South Carolina State Accident Fund, for Respondent South Carolina Uninsured Employers Fund.

**HEWITT, J.:** This case is about who has to pay a workers' compensation claim: AmGuard Insurance Co. or the South Carolina Uninsured Employers Fund. The Workers' Compensation Commission held AmGuard was liable because a phone conversation involving AmGuard misled the injured worker's employer into believing AmGuard would add South Carolina coverage to the employer's workers' compensation policy.

We affirm. This case is controlled by the Commission's findings of fact. The record supports the key findings, and those findings in turn support the Commission's ruling that the phone call caused the employer to mistakenly (but reasonably) believe it had coverage.

## FACTS

AmGuard issued a workers' compensation insurance policy to Central Masonry—a Georgia-based company. The policy covered Central's operations in Georgia and North Carolina.

In August 2015, Central had an insurance broker contact AmGuard about getting workers' compensation coverage in South Carolina. Central was scheduled to start a series of jobs in South Carolina and needed proof of coverage.

The request led to a back-and-forth that played out over several weeks. The broker took the pertinent information from Central, submitted the request that AmGuard add coverage, and told Central everything should be in order. The broker also issued Central a certificate for proof of coverage, but about two weeks later, AmGuard called the broker for more information.

AmGuard began the phone call by explaining South Carolina would be added to Central's policy, but then asked how Central's $10,000 in expected South Carolina payroll should be allocated between various jobs. After the broker responded that Central would be using subcontractors for three of the four jobs listed on Central's coverage request, the AmGuard representative advised that Central would not need coverage in South Carolina unless it had payroll in South Carolina.

The conversation was stilted and confusing. No further mention was made of the fourth job on Central's coverage request—the one that indisputably had $10,000 in expected payroll. The broker explained Central would be hiring subcontractors to perform much of the work but wanted to add South Carolina coverage because Central had been "hit" in the past. The call closed with AmGuard explaining it would

add a "waiver" to Central's policy because an "excluded officer" would be overseeing the work on the South Carolina jobs. The term "excluded officer" appears to be a reference to the rule that a business owner may elect to exclude himself from the business's workers' compensation coverage. *See* S.C. Code Ann. § 42-1-130 (2015). Still, the phone call ended as it began: with AmGuard's statement to the broker that something was being added to Central's policy.

About three months later—in December 2015—Calvin Felder broke his wrist while working for Central at a job in South Carolina. Central notified its insurance broker of the incident.

It soon became apparent that AmGuard had not added South Carolina to Central's policy months before. The reason given for this was that Central had supposedly reported to its broker (and the broker had supposedly relayed to AmGuard) that there would be no South Carolina payroll on the jobs.

As a factual matter, that reason was mistaken. The record is clear that Central told the broker there was $10,000 of expected payroll on a job in Charleston. Also, the phone call between the broker and AmGuard began with an acknowledgment that Central expected to have around $10,000 in South Carolina payroll.

The single commissioner found Central and the Uninsured Employers Fund were liable for the claim. That decision was focused on agency—the single commissioner found the broker was not AmGuard's agent and had no authority to bind AmGuard by issuing Central a certificate of insurance.

The appellate panel reversed and held AmGuard was estopped from denying coverage. The panel focused on the acknowledgment in the phone call between AmGuard and the broker that Central would have some South Carolina payroll. The panel also noted AmGuard began the phone call by assuring the broker that South Carolina was being added to Central's policy, that Central did nothing wrong, and that Central was unaware until after Mr. Felder's accident that AmGuard had not added South Carolina coverage to its policy. This became the Commission's final decision per the Workers' Compensation Act. *See* S.C. Code Ann. § 42-17-60 (2015).

**ISSUES**

1. Whether the Commission erred by finding AmGuard was liable when the broker was not AmGuard's agent.

2. Whether the Commission erred by finding the call between AmGuard and the broker contained a misleading representation regarding coverage.

3. Whether the Commission erred by not finding the doctrine of unclean hands barred Central from securing relief.

## STANDARD OF REVIEW

The Administrative Procedures Act supplies the standard of review for workers' compensation cases. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132-35, 276 S.E.2d 304, 305-06 (1981). Under the APA, the Commission's findings of fact are binding unless they are clearly erroneous in the view of the reliable, probative, and substantial evidence in the record. *See* S.C. Code Ann. § 1-23-380(5)(e) (Supp. 2020).

## ESTOPPEL/MISLEADING REPRESENTATION

We begin with this issue because we find it controls. The Commission's appellate panel found: the phone call between AmGuard and the broker acknowledged Central would have at least some direct employees in South Carolina, AmGuard began the conversation by assuring the broker that South Carolina would be added to the policy, and AmGuard's statements to the broker misled Central. The Commission's impressions of the phone call are questions of fact. We cannot say they are clearly erroneous in light of the record.

Estoppel applies if an insurer has misled the insured into believing a particular risk is within an insurance policy's coverage. *Standard Fire Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990). The elements of estoppel are familiar: ignorance of the truth by the party claiming estoppel, misleading representations or conduct by the party to be estopped, reliance by the party claiming estoppel, and a prejudicial change in position as the result of reliance. *Pitts v. New York Life Ins. Co.*, 247 S.C. 545, 552, 148 S.E.2d 369, 371 (1966).

It is not difficult to map the Commission's findings on these elements. The Commission found Central was ignorant of the truth (that AmGuard had not added coverage) and AmGuard's statements to the broker misled Central. Reliance and prejudice are similarly straightforward—Central hired Mr. Felder believing it had workers' compensation coverage and did not seek coverage elsewhere.

This case admittedly has some differences from other cases involving coverage-by-estoppel. In *Pitts*, for example, estoppel applied because the insurance company continued accepting and retaining premiums long after a certain coverage expired. 247 S.C. at 552-53, 148 S.E.2d at 371-72. Central apparently did not pay

any increased premium here—a point AmGuard understandably employs in support of its argument. And in *Spencer v. Republic National Life Insurance Co.*, 243 S.C. 317, 133 S.E.2d 826 (1963), the misleading representation was arguably more explicit. There, an employee of the insurance company promised the insured that there would be no gap or delay in coverage if the insured elected to switch insurance providers. *Id*. at 324, 133 S.E.2d at 829.

We do not see these distinctions as controlling. The Commission believed the critical takeaway from the phone call was AmGuard erroneously told the broker—and (by extension) Central—that Central was getting some sort of workers' compensation coverage for South Carolina or did not need it. As mentioned above, the phone call began with AmGuard assuring the broker that it was adding "waivers" for South Carolina, and the call ended the same way; the second time, with reference to waivers for excluded officers. Even as to the second statement, the only way we are able to make sense of it is to read it as a promise that something South Carolina related was being added to Central's coverage. We are not alone in this confusion. According to the record, the parties were puzzled by what this statement meant. Thus, as we see it, this case tracks with the insurer's promise of coverage in *Spencer*.

## OTHER ISSUES

AmGuard's agency argument focuses on a purported lack of authority by the broker to bind AmGuard and issue a certificate that Central had workers' compensation coverage. AmGuard insists the broker was Central's agent, not AmGuard's agent, and that the broker had no authority to issue a certificate unless a policy providing coverage was in place.

We respectfully reject this argument. As we recounted in our discussion of estoppel, the Commission found the broker informed AmGuard that Central would have payroll in South Carolina. In response, AmGuard told the broker something was being added to Central's coverage even though Central might not need coverage. The Commission's decision was driven by estoppel, not agency. *Cf. Id.* at 321-22, 133 S.E.2d at 828 (holding an argument about parole testimony was irrelevant because oral testimony was not admitted to vary the terms of a written contract, but was admitted on the issue of estoppel).

AmGuard also argues that the broker has unclean hands and that the broker's unclean hands in turn make Central's hands dirty. This argument is not preserved. An appellant may only argue grounds for reversal that were argued below. *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422-23, 526 S.E.2d 716, 724 (2000). There is no question AmGuard consistently argued the broker bore the lion's share of the

fault, but AmGuard never argued the broker had unclean hands preventing Central from claiming estoppel.

**AFFIRMED.**

**LOCKEMY, C.J., and HUFF, J., concur.**